**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICHARD A. HAY, JR.,

Plaintiff,

CASE NO. 04-71063

-vs-

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

SHAW INDUSTRIES, INC.,

Defendant.
_________________________________/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Defendant Shaw Industries, Inc.'s ("Defendant Shaw") Motion for Summary Judgment.

**BACKGROUND:**

Plaintiff, Richard Hay, Jr. ("Plaintiff") filed his Complaint in Wayne County Circuit Court on February 22, 2004, alleging that Defendants Shaw and Jeffrey Reid ("Reid") violated the Michigan Whistleblowers Protection Act ("WPA") by terminating him for reporting a violation of a Michigan statute to the Belleville Police Department. On March 23, 2004, Defendants removed this action to this Court. Defendant Reid was subsequently dismissed from this action on August 22, 2005, by stipulation of the parties.

Plaintiff was hired by Defendant Shaw on June 27, 1997 as a Lift Truck Operator ("LTO"). On July 5, 2001, Plaintiff was involved in a workplace incident with his co-worker Yusuf Munir. This is the first of two altercations between Plaintiff and Munir. Regarding this

first incident, Plaintiff's supervisor, Souleiman Abad, reported that Plaintiff and Munir were "both angry at each other. Richard said Yusuf pushed him, & Yusuf and 2 witnesses said that never happened." (Def. Shaw's Mot. Ex. 6). Plaintiff provided a written statement which stated "[Yusuf] pushed me up against the desk hurting my back. Greg and Rod was holding Yusuf back while I went back into the office." (Pl's Resp. Ex. 6).

This incident was classified as a "non-disciplinary matter of record" and not a "final warning" or a "written warning." (Pl.'s Resp., Ex. 8). Under Defendant Shaw's policies, a "final warning" lasts only 15 months, and a "written warning" lasts 12 months. (*Id.*). The "matter of record" documenting the July 5, 2001 incident provides:

> On 7/5/01, at 3:35 pm Richard Hay & Yusuf Munir came in my office and they were both angry at each other. Richard said Yusuf pushed him, & Yusuf and 2 witnesses said that never happened.
>
> The statement given to me by both employees did not match. After both employees cooled down, both were apologizing to each other.
>
> I have discussed with both employees that this kind of behavior on the job could lead to a physical confrontation & needs to be stopped at any cost.
>
> If this problem continues it could lead to a disciplinary action including a possible dismissal.

(Def. Shaw's Mot. Ex. 9).

In December, 2001, Plaintiff received training regarding workplace violence by Defendant Shaw. (*Id.* Ex. 9). Plaintiff signed a training acknowledgment which provided *inter alia*:

> Workplace violence is taken seriously at Shaw. Employees should report concern to their supervisor ... Committing acts of workplace violence can result in disciplinary action including discharge. By each employee treating one another with courtesy and respect, these situations can be eliminated.

(*Id.*).

Plaintiff consistently received favorable performance evaluations, pay raises and ultimately Plaintiff was promoted in July 2002, and moved from the first to the third shift. (Pl.'s Resp., Ex. 1-5; Def. Shaw's Ex. 7). On November 21, 2003 Yusuf Munir and Plaintiff had another confrontation, which is at issue in this case. Munir was the interim first shift lead, and he and Plaintiff argued regarding co-worker assignments. Plaintiff testified to this incident as follows:

> Q. Did you start the yelling, Mr. Hay?
>
> A. I yelled, "What are you talking about?"
>
> Q. Did you start the yelling?
>
> A. Yes, I did.
>
> Q. And then Mr. Munir began to yell back at you?
>
> A. Yes.
>
> Q. And you've described you were yelling about whose shift it was and whose responsibility it was?
>
> A. Yes.

(Pl.'s Dep. 157). The situation escalated. After Plaintiff was separated from Munir, he called the Van Buren Township police and Reid, the supervisor of both Plaintiff and Munir.

Reid and the Van Buren police arrived on the premises of Defendant Shaw's facility at the same time. (Reid Dep. 108). Plaintiff testified that when Reid saw Plaintiff, he said "why did you call the cops?" and "I don't know what's going to happen now." (Pl.'s Dep. 230, 231, 238). Plaintiff testified that Reid also asked him "are you sure you want to press charges." (*Id.* at 235). Plaintiff testified that Reid was yelling at him and was mad. (*Id.* at 237). Reid testified

that when the police are called, Defendant Shaw's risk management department must be notified. (Reid Dep. 127, 182).

Reid conducted an investigation of the incident and took several witnesses statements. The first witness, Belinda Plemmons, indicated that she observed Plaintiff and Munir yelling at each other. (Def. Shaw's Mot. Ex. 13). Plemmons also indicated that the incident occured "in the hard surface area and lunch room area," which Plaintiff admitted was Munir's work area. (*Id.*; Pl.'s Dep. 96-97).

A second witness, Steve Burrell reported seeing Munir and Plaintiff "standing toe to toe," which caused him to say "O my Lord, I hope they don't start fighting." (Def. Shaw's Mot. Ex. 13). A third witness, Matthew Raezle stated in part:

> I do not know where they went. Around five minutes later, I heard the yelling again. Standing at the half wall in the show room I heard something of it. At the time I thought nothing of it. Looking back, it sounded like something hitting something, not sure ... Walked over to the side door to the warehouse and saw Rod separating Rich and Yusuf like something had happened between them, but it looked like something did ... I will say that Yusuf was the aggressive one. I heard things from Yusuf like 'you better get out of my face' and 'don't come near me.' Did not hear Rick say things like that to Yusuf.

(*Id.*).

Yusuf Munir's statement provided:

> Richard went back into the office saying that he was going to call the police for putting my hands on him, but I did not touch him. After a while, I seen the police come in and they asked me did I put my hands on Richard, and I told them no ... This whole incident is wrong because I did not touch Richard Hay. He has his word and some marks on his neck, but I have my word and a bunch of witnesses that did not see me touch Richard.

(*Id.*).

The Plaintiff's statement to the Van Buren Police Department provided:

> [Munir] came in. We had words. He bumped me and told me to get out of here or else. Then he grabbed me around the neck and pushed me. His name is Yusuf Munir. This

> was the second time. The first time, I did not pursue it.

(*Id.* Ex. 18). Plaintiff did state in his deposition that except for Munir's physical assault, he was an equal participant in the argument. (Pl.'s Dep. 195).

The Police Report by Corporal Eric Thornsby provided that "I spoke to Mr. Munir who admitted to bumping into Mr. Hay, but he denied choking him. Mr. Munir refused to write a statement." (*Id.*). The Plaintiff also submits a photograph demonstrating scratch marks on his neck which he contends came from Munir choking him. (Pl.'s Dep. 223; Pl.'s Resp. Ex. 12).

After being sent home by Reid, Plaintiff was called back into the office so pictures could be taken of his neck. (Pl.'s Dep. 107). According to Plaintiff's testimony, upon his return, Reid again stated "I don't know why you had to call the cops." (*Id.*).

Once Reid completed his investigation, he forwarded the file to William Brueckner who works in Defendant Shaw's human resources department in Dalton, Georgia. (Reid Dep. 187). During a conference call regarding the incident, Reid provided:

> I told them my thought [was] they should both be put on final [warning] and that it would be clearly written on there [sic] [record] that any kind of altercation between either of them with themselves or any other employee would result in termination.

(*Id.* at 201). Reid further testified that he did not make the termination decision, rather he "relayed the message" from human resources. (*Id.* at 180, 200). Regarding human resources decision to terminate Plaintiff, Reid testified:

> when I got the call from them ... they had already decided [Plaintiff and Munir] were to be terminated. That was the message relayed to me and I wasn't in on the decision whatsoever.

(*Id.* at 203).

Reid also testified:

> But they explained to me that it breaks the workplace violence [policy] that we had just signed and it's the second time this has happened with them showing a pattern that we had to let them go.

(*Id* at 202).

Reid also provided that human resources never mentioned Plaintiff's calling the police other than that they wanted to see a copy of the police report. (*Id.* at 208). Plaintiff testified that he when he was fired by Reid he was told he was being "fired for your second offense." (Pl.'s Dep. 106).

## ANALYSIS

### A. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause

of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B. Discussion**

The Michigan WPA provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of

> employment because the employee, or person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by the public body, or a court action.

(M.C.L. § 15.362). The statute prevents employers from retaliating against employers who initiate reports to official agencies of suspected law violations and those who are contacted by authorities to participate in an official investigation. *Henry v. City of Detroit,* 243 Mich. App. 405, 410 (1999). When there is no direct evidence that an employer's adverse action was motivated by retaliation, Michigan courts have used the burden-shifting framework generally used in employment discrimination cases to determine if a plaintiff has shown a retaliatory motive by circumstantial evidence. *Anzaldua v. Band,* 216 Mich. App. 561, 580 (1996). To prevail under this framework, a plaintiff must present a *prima facie* case, at which point the defendant must come forward with a legitimate, non-discriminatory reason for its action. If the defendant is able to offer such a reason, the plaintiff must offer evidence that the defendant's justification is a pretext that masks its true retaliatory intent. *Roulston v. Tendercare,* 239 Mich. App. 270 (2000). Plaintiff retains the burden of proof at all times. *Jones v. City of Allen Park*, Case No. 04-2117, slip op. at 8 (6th Cir. Jan. 3, 2005) (unpublished).

**1. Whether Plaintiff has established *prima facie* case under the WPA**

To establish a *prima facie* case under the WPA, a plaintiff must show that (1) he was engaged in a protected activity as defined by the act, (2) the defendants discharged him, and (3) a causal connection existed between the protected activity and the discharge. (*Id.*). At issue in the instant case is whether Plaintiff can demonstrate that there was a causal connection between the protected activity and the discharge. To prevail on a claim under the WPA, a plaintiff must

"show that his employer took adverse employment action *because of* plaintiff's protected activity. . . ." *Scott v. Total Renal Care, Inc.*, Case No. 04-71700, 2005 WL 1680677, slip op. at 8 (E.D.Mich., July 19, 2005) (emphasis in original). It is not sufficient for a plaintiff to show that his employer merely "disciplined him *after* the protected activity occurred." *Id.*

Regarding the first element, the Court notes that a criminal complaint made to the police invokes protection of Michigan's WPA. *Dudewicz v. Norris Schmid, Inc.*, 443 Mich. 68 (1993). In *Dudewicz,* the plaintiff appealed from a directed verdict granted by the trial court on his WPA claim. The plaintiff, a former employee of defendant brought a claim under Michigan's WPA claiming that he was illegally discharged for filing a criminal complaint against a co-employee for assault and battery. The plaintiff was told by the defendant that he had to drop the criminal charges against his co-employee or be fired. The Michigan Supreme Court found the WPA applicable to these facts and that the trial court erred in granting a directed verdict on this issue.

Instantly, there is no direct evidence that Plaintiff's discharge was motivated by his complaint to the police. Therefore, Plaintiff must establish his claim through circumstantial evidence.

Plaintiff contends:

> Plaintiff's involvement of the criminal justice system, and the necessity to bring risk management in the form of Edward Whorton because of the criminal complaint, all lead to the decision to terminate Plaintiff sufficiently to deny summary judgment.

(Pl.'s Resp. at 13).

Defendant Shaw contends that the first incident in July 2001 resulted in an explicit warning to Plaintiff that he would be fired if a second incident occurred. Defendant Shaw emphasizes that a second incident between Plaintiff and Munir occurred in November 2003.

As such, Defendant Shaw contends that Plaintiff cannot show his discharge was causally related to his having called the police.

Plaintiff contends that his earlier warning was a "non-disciplinary matter of record." (Pl.'s Resp., Ex. 8). Plaintiff provides that this "matter of record" occurred 27 months before the discharge decision. Under Defendant Shaw's policies, a "final warning" lasts only 15 months, and a "written warning" lasts 12 months. (*Id.*). Both of these events are disciplinary events in Defendant's system. Plaintiff contends that Defendant Shaw's argument that a "non-disciplinary event" would have a longer duration than a "disciplinary event" including a final warning fails.

Plaintiff also points to Reid's statements to him as evidence that his discharge was causally connected to his criminal complaint. Defendant Shaw contends that Reid did not make the decision to discharge Plaintiff, therefore, his alleged inquiries bear no causal significance to that decision.

The Court notes that Yusuf Munir was also terminated by Defendant Shaw. Plaintiff contends that he did not physically assault Munir, therefore, he was treated differently because he filed criminal charges. Defendant contends that Munir's alleged physical assault is irrelevant because Plaintiff admitted he was a full participant in the argument itself.

Plaintiff cites *Trepainer v. National Amusements, Inc.,* 250 Mich. App. 578 (Mich. App. 2002) in support of his claim that his discharge was causally connected to his criminal complaint. However, the Court finds that the principal issue in *Trepainer* was whether the plaintiff was involved in a protected activity under the WPA when he sought a personal protection order against a co-worker. *Id.* at 583. After finding that the plaintiff engaged in protected activity, the Michigan Court of Appeals found that a causal connection existed

between plaintiff's protected activity and his termination based upon the defendant's admission. In the instant case, it is clear that Plaintiff participated in protected activity when he called the police. It is also clear that Defendant has not admitted that Plaintiff's termination was connected to his protected activity. Indeed, Defendant has consistently denied any such connection.

The Court finds *Roulston v. Tendercare (Michigan), Inc.,* 239 Mich. App. 270 (Mich. App. 2000) instructive. In *Roulston,* a social services director brought a claim against the defendant nursing home under the WPA. The plaintiff alleged that she was fired for reporting alleged resident abuse to state authorities. As in the instant case, the causal connection between the plaintiff's protected activities and her discharge was in dispute. The defendant contended that the plaintiff failed to prove a causal connection because she relied solely upon the timing of her discharge as evidence of retaliation. The defendant also argued that even if there were a link between the plaintiff's whistleblowing and her discharge, it is insignificant in light of their articulated reasons for her firing, namely that she was a substandard employee. The Court held that giving the benefit of any reasonable doubt to plaintiff, she demonstrated that her performance was really a pretext for retaliation by defendants. The Court based its reasoning upon the fact that the plaintiff inherited a paperwork backlog from her predecessor and she was rated "average" in all but one employment performance category.

The Court holds that Plaintiff has set forth a *prima facie* case under the WPA based upon the facts outlined below. Plaintiff's discharge occurred just five days after the incident. Plaintiff also submitted proof to this Court, the police and to Defendant Shaw that he was physically assaulted by Munir, and there is no evidence that Plaintiff participated in any physical violence against Munir. Plaintiff consistently received favorable performance evaluations by Defendant

Shaw, and his discharge occurred 27 months after the first incident which was classified by Defendant Shaw as a "non-disciplinary matter of record." Viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has met his burden of proving a *prima facie* case that he was fired based upon his protected activity. In making this determination, the Court is mindful that Plaintiff "need not prove his *prima facie* case by a preponderance of the evidence at this stage. Indeed, the burden of establishing the *prima facie* case is easily met." *Singfield v. Akron Metropolitan Housing, et al.,* 389 F.3d 555, 563 (6th Cir. 2004) (internal citation omitted).

**2. Whether Defendant Shaw has shown a legitimate, non-retaliatory reason for Plaintiff's discharge, and Plaintiff has established pretext**

Despite the above finding, the Court holds that Defendant Shaw has established a legitimate, non-retaliatory reason for Plaintiff's termination. As noted above, once a plaintiff has established a *prima facie* case of retaliation under the WPA, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for termination. *James v. HRP, Inc.* 852 F. Supp. 620 (W.D. Mich. 1994). However, "[a] plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Singfield v. Akron Metro. Hous., et al., infra,* at 564 (quoting *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000)). The Court notes the Sixth Circuit's statement in *Singfield* "that caution should be exercised in granting summary judgment once a plaintiff has established a *prima facie* inference of retaliation through direct or circumstantial evidence." *Id.* at 564.

Utilizing *Singfield's* three prong test, the Court finds that Plaintiff has failed to provide evidence demonstrating that Defendant's proffered reason for his termination has no basis in fact. There is no dispute that Plaintiff participated in a loud yelling match with Munir. Indeed,

at oral argument on January 5, 2006, counsel for Plaintiff admitted that the outbursts created an "incendiary" situation. Further, Plaintiff has not shown that this altercation did not actually motivate his termination. Plaintiff points to Reid's comments to him regarding his criminal complaint. However, the evidence indicates that Reid did not make the decision to terminate Plaintiff. In fact, Reid testified that he recommended Plaintiff receive a final warning rather than a termination. Consequently, his statements to Plaintiff regarding his criminal complaint are insufficient to find that Defendant Shaw's reason for the discharge was pretextual. Moreover, Munir was also fired because of the altercation.

Finally, Plaintiff has not proven that the altercation was insufficient to warrant termination by Defendant. Plaintiff testified that he started the yelling match and could have walked away from it. (Pl.'s Dep. 133, 157, 265). Additionally, as noted above, Plaintiff's counsel conceded during oral argument that the quarrel between Plaintiff and Munir escalated into an incendiary situation. Regardless of the classification of the July 5, 2001, incident between Plaintiff and Munir, the record explicitly establishes that Plaintiff was warned that if further problems between he and Munir occurred, he could be subject to discharge. Additionally, Plaintiff received training regarding workplace violence and acknowledged that he was aware of Defendant Shaw's workplace violence policy. Based on the above evidence, Plaintiff has failed to establish that Defendant's proffered reason for his termination was pretextual. While "an employer's true motivations are particularly difficult to ascertain" in retaliation cases, *id.*, Defendant has demonstrated that Plaintiff was explicitly warned that a further altercation with Munir could result in his discharge, and also received training relating to workplace violence to that effect. Reid's comments to Plaintiff, complaining about his calling

the police, are negated by the fact that Reid never said that Plaintiff would be fired for the call and, more importantly, Reid recommended that Plaintiff not be fired.

Furthermore, this case is distinguishable from *Dudewicz, infra* and *Roulston, infra*. In *Dudewicz*, there was evidence that the plaintiff's employer told him that if he called the police, he would be fired. There is no such evidence here. In *Roulston,* the plaintiff submitted strong evidence that the defendant's proffered reason for her discharge was based upon her WPA protected activity and not her performance. Here, Plaintiff participated in an altercation that violated Defendant Shaw's workplace violence policy[1] and of which he was previously warned could lead to his discharge.

The Michigan Court of Appeals in *Roulston* also set forth a test to determine the question of mixed motive, (i.e., retaliation plus a legitimate business reason) for the issue of pretext as follows:

(1) whether the participation in the protected activity played any part in the discharge,

---

[1] Plaintiff argues that there is no evidence that he violated Defendant Shaw's workplace violence policy. However, the Court finds that the statements given by the witnesses who observed the altercation between Plaintiff and Munir, the prior history between Plaintiff and Munir, and Plaintiff's own testimony provide a reasonable basis for the finding that Plaintiff violated Defendant Shaw's workplace violence policy. The Court also notes that William Brueckner testified that "[w]e discussed the facts that were discovered during the investigation; we discussed the history that both employees had with a similar issue; I talked about our company stance and no tolerance policy regarding workplace violence. From that, everyone came to the agreement that termination was in order." (Brueckner Dep. 46). Brueckner further testified that Plaintiff's altercations with Munir were "provoking in nature that could've potentially led to violence in the work [place]." (*Id.* at 58).

no matter how remote,

(2) whether the plaintiff's protected activity was a substantial factor in his discharge,

(3) whether the plaintiff's protected activity was the principal, but not sole reason for the discharge,

(4) whether the discharge would have occurred had there been no protected activity.

*Roulston* at 281.

The Court finds that Plaintiff has not demonstrated that his protected activity played a role in his discharge. Conversely, Defendant Shaw has submitted evidence demonstrating that Plaintiff's participation in the altercation with Munir - and not his criminal complaint - was the reason for his discharge. Plaintiff was not discharged at the time he called the police and Reid did not play any part in the determination to discharge Plaintiff. The parties that discharged Plaintiff and Munir did so after a thorough investigation regarding documented workplace misconduct by Plaintiff. Accordingly, the Court grants Defendant Shaw's Motion for Summary Judgment based upon its legitimate, non-retaliatory reason for discharging Plaintiff.

**CONCLUSION:**

For the foregoing reasons, the Court GRANTS Defendant Shaw's Motion for Summary Judgment.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: January 6, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 6, 2006.

s/Jonie Parker
Case Manager